Burt that the horse had been removed to the new stall by order of Mr. Catlin himself. Burt thereupon "said he did not give a damn for Mr. Catlin or any one else," and insisted upon the removal of the horse. Snyder declared that the horse should remain there, whereupon Burt struck Snyder several times, as has already been stated,—once upon the face. This language and conduct, in the presence of other persons in Mr. Catlin's employ, would be so plainly detrimental to the master's interests, and so inconsistent with the duties of the service, as to warrant the summary dismissal of the offender. But the jury evidently did not believe this account of the occurrence. Their verdict shows that they must have given credence to the testimony of Burt, who flatly denied that Snyder ever told him Mr. Catlin wished the horse to remain in the stall where he was, and who declared that he did not strike Snyder until the latter said to him, "God damn it! you have been telling lies enough." At this provocation, Burt says he lost his head and struck out, hitting Snyder's arm and grabbing his hand, but not striking his face. Burt adds that he struck at Snyder again after Snyder had called him a dirty cur. It will be seen that Burt's version negatives the use of any language reflecting in any way upon Mr. Catlin, and indicates that his use of force was provoked by Snyder's charge that he was a liar. Of course, this provocation did not justify the assault; but we are here concerned not with the question whether Snyder's words constitute a defense in behalf of Burt against a charge of assault, but with the question whether, if Burt's account of the encounter be true, he was guilty of misconduct for which Mr. Catlin could properly discharge him. It seems to us quite clear that the dismissal was unwarranted if Burt did no more than he says he did. To resent the imputation of being a liar, to the extent stated, could not harm the master in any essential respect. The jury must have adopted a view of the facts leading to this conclusion, and we can find no reason in the record why their verdict should not have been allowed to stand. The exceptions taken by the defendant on the trial present no error sufficient to sustain the order appealed from on that ground, and we think there must be a reversal.

Order setting aside verdict reversed, and judgment directed for the plaintiff upon the verdict, with costs. All concur.

---

TOBIN v. WORKINGMEN'S CO–OP. ASS'N OF UNITED INS. LEAGUE OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. November 15, 1901.)

INSURANCE POLICY—TIME FOR BRINGING SUIT—WAIVER—QUESTION FOR JURY.
    Where an insurance policy provided that no suit should be brought thereon within 30 days after filing proofs of death, nor after 6 months from the time when the right of action should accrue, and the association refused to redeliver the policy on rejection of the claim, the question as to waiver of the limitation provision of the policy was for the jury.

Appeal from trial term, Westchester county.

Action by Margaret Tobin against the Workingmen's Co-operative Association of the United Insurance League of New York. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

William Riley, for appellant.

I. J. Beaudrias, for respondent.

SEWELL, J. This action is to recover $500, the amount of an insurance policy or certificate issued by the defendant upon the life of James Morrissey, a nephew of the plaintiff. The policy in question contained the following provision:

"No suit shall be brought or action commenced against said association under this certificate until thirty days shall have expired after filing proofs in its chief office, nor after six months from the time when the right of action shall accrue."

James Morrissey died January 21, 1899. The plaintiff informed the defendant of Morrissey's death by letter, and defendant's secretary replied that the first proceeding was to file with the company the policy and the book in which the defendant's agent entered the premiums paid. The policy and the books were sent to the defendant February 2d. Proofs of death were filed on the 7th of February, and on the 14th of March the defendant's secretary wrote to the plaintiff as follows:

"We have about completed our investigations of your insurance operations. It is evident that your claim for insurance upon the life of James Morrissey cannot be recognized. Before taking any further action, we will see you at this office on Monday, March 20, at 10 a. m."

The plaintiff testified:

"I went down to the company's office on the 17th of March. And I there again saw Mr. Salisbury. I talked then about payment of this policy on the life of James. He told me that he would not pay me; * * * and then when I was leaving the office he says to me, 'We will pay you,' he says, 'what you paid in, only twenty cents out of the dollar to the agent that collected it.' And I told him that I would not take it, and he said he would not pay it, because it was a graveyard insurance. * * * He said further about it — He said he had pretty near all the information he wanted. I did say something about my premium receipt and the old policy at that time. I asked them of him, and he would not give them to me. He said they were in his possession, and he would keep them. And I never have had them since."

The plaintiff also testified that she could not read; and the evidence of Thomas F. Curran, her attorney, is that he demanded the policy of the defendant before the six months had expired, that it was not returned, and that he had no knowledge of the limitation clause in the policy. This action was commenced December 6, 1899. The complaint was dismissed upon motion of counsel for the defendant at the close of the testimony, and the question is whether or not it was for the court to hold, as a matter of law, upon the evidence, that the plaintiff was not entitled to recover.

This case cannot be distinguished from Dougherty v. Insurance

Co., 3 App. Div. 313, 38 N. Y. Supp. 258, or Sullivan v. Insurance
Co., 63 App. Div. 280, 71 N. Y. Supp. 525, where this court held
that the acceptance and retention by the company of the policy and
papers were sufficient to raise a question of fact as to the waiver of
the limitation provision of the policy. In Dougherty v. Insurance
Co., supra, Mr. Justice Hatch said:

"Plaintiff was in no position to bring her action until she was possessed of
the policy and papers. They were essential in order to prepare her com-
plaint. It would be most reprehensible for defendant to withhold her papers,
—the evidence of her right to prosecute an action,—and then insist that she
had notice of the rejection of the claim, and was absolutely concluded there-
by unless she acted before the end of the six months. Good faith required
that her papers be returned as soon as defendant had acted thereon. Re-
turning the policies after this event, and then insisting upon this short stat-
ute of limitations, ought not to receive favor at the hands of the court. It
has too much the earmarks of an intention to create a condition where the
limitation may be availed of."

The judgment should therefore be reversed, and a new trial grant-
ed; costs to abide the event. All concur.